**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| KRISTINA GAIL MEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00006-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's final decision denying Kristina Gail Meyer's ("Meyer") applications for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385.

**I.     Background**

On November 14, 2011, Meyer filed her application for disability insurance benefits; she filed for SSI the following day. (Tr. 161-62, 163-68) The Social Security Administration ("SSA") denied Meyer's applications on January 11, 2012. (Tr. 95-102, 103-110) She filed a timely request for a hearing before an administrative law judge ("ALJ") on February 15, 2012. (Tr. 111-12) Following a hearing, the ALJ issued a written decision on October 17, 2013 upholding the denial of benefits. (Tr. 7-32)

The Appeals Council denied Meyer's request to review the ALJ's decision. (Tr. 1-4) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v.

Apfel, 530 U.S. 103, 107 (2000). Ms. Meyer filed this appeal on January 12, 2015. (Doc. 1) The Commissioner filed an answer on March 13, 2015. (Doc. 4) Meyer filed a Brief in Support of her Complaint.[1] (Doc. 16) The Commissioner filed a Brief in Support of the Answer. (Doc. 17) Meyer did not file a Reply brief.

**II.  Decision of the ALJ**

The ALJ determined that Meyer met the insured requirements of the Social Security Act through December 31, 2011, and had not engaged in substantial gainful activity since February 17, 2006, the alleged onset date of disability. (Tr. 12-13) The ALJ found that Meyer has the severe impairments of chondromalacia of the right knee, fibromyositis, degenerative joint disease of the lumbar and cervical spines, obesity, depressive disorder, adjustment disorder, general anxiety disorder, bipolar disorder, obsessive compulsive disorder (OCD), and panic disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14)

After considering the entire record, the ALJ determined Meyer has the residual functional capacity ("RFC") to perform sedentary work in that she can lift and carry 10 pounds occasionally. (Tr. 15) Meyer can stand or walk up to 2 hours and sit approximately 6 hours in an 8-hour workday, but cannot climb ramps, stairs, ladders, ropes, or scaffolds. (Id.) Meyer can occasionally stoop and kneel, but cannot crouch or crawl and must alternate positions between siting and standing every 35 minutes if necessary. (Id.) The ALJ found Meyer should avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery.

---

[1] The Court notes Meyer's brief is not in compliance with the Local Rules of the United States District Court for the Eastern District of Missouri, which require all filings, unless otherwise permitted by leave of Court, to be double spaced typed and no more than 15 pages. See E.D. Mo. L.R. 2.01, 4.01 (D). The Court will overlook her noncompliance in this case and suggests that counsel follow the Rules in future briefs.

2

She is limited to unskilled work only and should have no more than occasional contact with the public and coworkers. (Tr. 15-16) Further, the ALJ found Meyer should not be required to perform high production rate jobs, although low and medium production rate jobs would be acceptable. (Tr. 16) The ALJ found Meyer unable to perform any past relevant work, but that jobs exist in significant numbers in the national economy that she can perform, including document preparer, eye glass polisher, and circuit board assembler. (Tr. 22-23) Thus, a finding of "not disabled" was appropriate. (Tr. 23)

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

### 1. Meyer's testimony

Meyer was 36 years old at the time of the hearing and living with her boyfriend of eight years and their three children, aged 18, 11, and 7. (Id.) Meyer has at least a high school education. (Tr. 41) She testified that she has not worked since 2006 due to hip and lower back pain, radiating down to about mid-thigh, as well as pain in her neck and both knees. (Id.) She received two MRIs, one a week prior to her testimony, and the other a year prior. (Tr. 42-43) As of the date of the hearing, the more recent MRI had not yet been dictated or read by a radiologist.[2] (Tr. 44)

Meyer is five foot two inches to five foot three inches and weighs approximately 210 pounds. (Tr. 48) She can walk for probably 15 minutes and stand for five to 10 minutes without having to sit down or rest. (Id.) On average, Meyer sits for fifteen to 20 minutes at one time before standing up and stretching. (Tr. 49) She testified she can pick up about 15 pounds. (Id.)

---

[2] The MRI report, dated August 31, 2013, was received by the ALJ prior to his determination and is included in the Administrative Transcript as Exhibit No. 51F. (Tr. 1032-33)

Meyer takes medication for her thyroid, cholesterol, and pain including a muscle relaxer, nerve blocker, and Piroxicam, an anti-inflammatory drug. (Tr. 47-48) At the time of the hearing, she was still smoking, but trying to quit. (Tr. 49)

On a normal day, Meyer wakes up her daughter, who sleeps on a downstairs couch, to wake up her brother and get ready for school. (Tr. 45) She does this so that she herself does not have to go upstairs. (Id.) After her children leave for school, Meyer lays down on either the couch or her bed. (Tr. 45-46) She does not cook, except to make sandwiches, and does not use her microwave. Her children help her get stuff out of the fridge. (Tr. 46) Meyer does drive and grocery shops at a small store in town, but has trouble caring for her personal needs that require her to bend over. (Tr. 46-47)

In addition to her physical symptoms, Meyer testified she has panic attacks around other people and anxiety. (Tr. 42, 45) For her mental health issues, Meyer reported taking Klonopin, Lithium (300 milligrams), and Lamictal. (Tr. 50) Her doctor increased her dosage of Klonopin to one more per day, but she still gets panic attacks if there are too many people in the grocery store. (Id.)

Upon questioning by her attorney, Meyer testified that she has pain in her back and hips "every day, all day." (Tr. 51) She described various treatments such as surgeries, injections, physical therapy, and ice packs. (Id.) Meyer wears a knee brace on her right knee and on bad days, uses a cane. (Tr. 52) She uses a cane a couple of times a week. It is not prescribed by a doctor. (Id.) It was Meyer's testimony that she used to be physically active, doing aerobics and cycling. (Tr. 53) She doesn't sleep well because when she lies down, parts of her body go numb. Meyer averages three and a half to four hours of sleep per night. (Id.) She uses a book to help her remember appointments, when to take her medications and when to pay her bills. (Tr. 54) She

reads and watches television during the day but has difficulty maintaining concentration. (Id.) Meyer estimates that at least since July of 2011, when her family moved here, she spends between five and six hours of an eight-hour period lying down on the couch or on her bed. (Tr. 56)

### 2. Testimony of Vocational Expert

With respect to Meyer's vocational history, vocational expert Janice Hastert testified that Meyer had worked as an appliance sales person, a position classified as light, semiskilled work with a specific vocational preparation ("SVP") of 4. (Tr. 59-60) Ms. Hastert indicated that Ms. Meyer did not meet the SVP for this occupation. (Id.)

For the first hypothetical, the ALJ asked Hastert to assume an individual with Meyer's age, education, and work experience who was limited to performing sedentary exertion level work; can occasionally climb stairs and ramps; can never climb ropes, ladders, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; who should avoid concentrated exposure to unprotected heights, excessive vibration and hazardous machinery; and who is limited to performing unskilled work that requires no more than occasional contact with the public and coworkers. (Tr. 60) Hastert opined that such a person would not be able to perform Meyer's previous work in appliance sales. (Id.) However, such a person would be able to perform a job such as a document preparer, DOT code 249.587-018, sedentary, unskilled position with a SVP of 2, with 30,000 jobs nationally available and 600 in Missouri. (Tr. 60-61) Such a person could also perform the job of eye-glass polisher, DOT code 713.684-038, sedentary and unskilled with a SVP of 2, with 28,600 jobs nationally available and 150 in Missouri. (Tr. 61) Lastly, Hastert testified that such a person could perform the job of circuit board assembler, DOT code 726.684-

110, sedentary and unskilled with a SVP of 2, with 66,500 jobs available nationally and about 820 in Missouri. (Id.)

For the second hypothetical, the ALJ asked Hastert to assume an individual of Meyer's age, education, and past work experience; who was limited to performing sedentary exertion level work; who could never climb stairs, ramps, ropes, ladders, and scaffolds; who can occasionally stoop and kneel but never crouch and crawl; who should be allowed to alternate between sitting and standing up every 35 minutes, if necessary; who should avoid exposure to unprotected heights, excessive vibration and hazardous machinery; who is limited to unskilled work only that requires no more than occasional contact with the public and coworkers; who should not be required to perform what would be considered to be high production-rate jobs, although low and medium production-rate jobs would be acceptable. (Tr. 61) Hastert opined that such person could perform the same jobs previously mentioned: document preparer, eye-glass polisher, and circuit board assembler. (Tr. 62)

For the final hypothetical, the ALJ asked Hastert to add the following limitations to the second hypothetical: any job must allow for occasional unscheduled disruptions of both the workday and workweek, secondary to the necessity to sit or lie down for extended periods of time during the day; an inability to focus or concentrate for a full eight hours out of an eight-hour workday; and unreliability as far as showing up to work second to symptoms or treatment; and. potential effects of medications. (Id.) It was Hastert's testimony that there would be no jobs in the national or regional economy available with all of the limitations set forth in this final hypothetical. (Id.) Myer's counsel did not ask any questions of Hastert, as the final hypothetical was "very similar to what [he] would have asked." (Tr. 63)

B.  **Medical Records**

The ALJ summarized Meyer's medical records at Tr. 16-22. Relevant medical records are discussed as part of the analysis.

IV.  **Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V.     Discussion

In her appeal of the Commissioner's decision, Meyer alleges the ALJ committed reversible error by (1) failing to give "great weight" to the opinions of her treating psychiatrist, Dr. Palepu (Doc. No. 16 at 22-23), and (2) posing an improper hypothetical question to the vocational expert. (Id. at 23-24) Because the ALJ erred in posing an improper hypothetical question to the vocational expert, the Court will only address that issue.

**Hypothetical question to vocational expert**

The ALJ found that Meyer has moderate difficulties with regard to concentration, persistence or pace. Specifically, "[t]he evidence in the record, including Meyer's own testimony, shows she has some difficulty in sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3). (Tr. 15) "[Meyer] alleges difficulty remembering, concentrating, completing tasks and following instructions." (Tr. 21)

The hypothetical on which the ALJ relied assumed "[Meyer] should not be required to perform what would be considered to be high production-rate jobs, although low and medium production-rate jobs would be acceptable." (Tr. 61) Meyer argues this hypothetical was improper because it failed to include limitations on concentration, persistence, and pace. (Doc. No. 16 at 23-24) In response, the Commissioner maintains the ALJ adequately accounted for Meyer's moderate limitations in concentration, persistence and/or pace by limiting her to only unskilled work that did not require high production rates. (Doc. No. 17 at 9)

To constitute substantial evidence, a hypothetical must set forth the impairments accepted as true by the ALJ. Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997) (citing Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985)). When an ALJ states that a claimant has

impairments of concentration, persistence or pace, the hypothetical must include those impairments. (Id.) (citing Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)).

In Newton, 92 F.3d at 695, the ALJ stated on the Psychiatric Review Technique Form that the claimant "often" had deficiencies of concentration, persistence, or pace, but the hypothetical presented to the vocational expert merely limited the claimant's capabilities to "simple jobs." The hypothetical did not specifically include impairments regarding concentration, persistence or pace. The court held that the reference to simple jobs in the hypothetical was not enough to constitute inclusion of such impairments and remanded with instructions to include the impairments of concentration, persistence or pace in the hypothetical. See also Rojas v. Colvin, No. 4:15-cv-00004-ODS-SSA, 2015 WL 9901286, at *2 (W.D. Mo. Jan. 13, 2015) (ALJ's hypothetical limiting plaintiff to "simple, unskilled" work failed to address the concentration, persistence or pace limitations in the hypothetical posed to the vocational expert).

By contrast, in Brachtel, 132 F.3d at 421, the Eighth Circuit found the ALJ had addressed the claimant's impairments in concentration and pace in a hypothetical limiting the claimant to "simple, routine repetitive work, which does not require close attention to detail," and including the impairment that the claimant "should not work at more than a regular pace." The Court found that "[w]hile this is scantly more than what was included in the Newton hypothetical, it is enough. In addition to the ability to do only simple work, the ALJ's hypothetical specifically limited concentration (work "which does not require close attention to detail") and pace ("should not work at more than a regular pace")." Id.

In this case, like in Newton and Rojas, the ALJ's hypothetical limited Meyer to "unskilled" work. The additional limitation to work that does not require high production rates

11

does not, in the Court's view, adequately capture Meyer's difficulties in remembering, concentrating, completing tasks and following instructions. Because the ALJ failed to address Meyer's moderate limitations in concentration and persistence in his hypothetical, the vocational expert's testimony was based on a deficient hypothetical and cannot constitute substantial evidence to support the Commissioner's decision. See Brachtel, 132 F.3d at 421; Hunt v. Massanari, 250 F.3d 622, 626 (8th Cir. 2001).

## VI. Conclusion

For these reasons, the Court finds this case should be remanded. On remand, the ALJ shall include Meyer's specific moderate limitations related to concentration and persistence in addition to those related to pace in a hypothetical question so that the vocational expert might accurately determine her ability to work. See Newton, 92 F.3d at 695.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Memorandum and Order.

Dated this 14th day of March, 2016.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**